IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KELDAH ELIZABETH HEDSTROM, Individually and as the Natural Parent and Guardian of D.O.P., a Minor,<br><br>Plaintiff,<br><br>vs.<br><br>CODY CLAY PETERS,<br><br>Defendant. | CV 22-81-BLG-SPW-KLD<br><br>FINDINGS AND RECOMMENDATION |

This matter is before the Court on Plaintiff Keldah Elizabeth Hedstrom's ("Hedstrom") Motion for Partial Summary Judgment, filed November 22, 2023. (Doc. 28). Defendant Cody Clay Peters ("Peters") has not filed a response to the motion, even after Hedstrom filed a notice advising the Court of that failure to respond. (Doc. 31). For the reasons stated below, the Court recommends granting Hedstrom's motion.[1]

//

---

[1] Hedstrom brings all claims on behalf of herself and on behalf of D.O.P. as his natural parent and guardian. For convenience, the Court refers to the claims brought on behalf of D.O.P. as his claims individually.

1

I.  Background

Pursuant to Fed. R. Civ. P. 56(e)(2), the failure to properly address a fact asserted in a motion for summary judgment allows the court to "consider the fact undisputed for the purposes of the motion." Accordingly, as Peters did not respond, the Court will take as true all the factual allegations made by Hedstrom in support of her motion for partial summary judgment, as set out in her Statement of Undisputed Facts. (Doc. 30).

Hedstrom is the mother and guardian of her son, D.O.P., and Peters is the father. In August 2020, Hedstrom and Peters were subject to an interim parenting plan, governing exchanges of physical custody of D.O.P.. On August 10, 2020, Hedstrom, D.O.P. and her mother's boyfriend, Richard Funke ("Funke") arrived at her house in Big Timber, to exchange D.O.P with Peters. They arrived at the house at 8:30 a.m., and Funke discovered Peters was already in the home. Hedstrom and D.O.P., who were outside waiting, watched Funke walk out of the home with Peters, who was holding a gun to Funke's back. Both Hedstrom and D.O.P. immediately experienced significant fear and Hedstrom believed she was going to die. D.O.P. had been hunting with his parents, and knew that guns were for killing.

Peters forced them into the home at gunpoint, and ordered them to walk into the living room. He told D.O.P., who was crying, to stand by him, and ordered

Hedstrom and Funke to lie face down on the living room floor, which was covered in glass from a broken window that Peters had apparently broken to gain access to the home. Peters had been in the home, laying in wait for Hedstrom and D.O.P. to arrive and was going to ambush them. Instead of getting on the ground, Funke tried to reason with Peters to deescalate the situation, but that angered Peters and he got heated and pointed the gun directly at Hedstrom's head. D.O.P. screamed and ran to Hedstrom, and Peters yelled he was "going to end this now." Both Hedstrom and Funke believed they were going to be shot, and they pleaded with Peters for their lives. Funke was eventually able to calm Peters down, and they persuaded him to go to the county mental health department. Peters was ultimately charged with a number of crimes for this incident, and he pled guilty to two counts of Felony Assault with a Weapon. At his change of plea hearing, Peters admitted to knowingly or purposely causing reasonable apprehension of bodily injury to Hedstrom and Funke. Peters was sentenced to ten years of incarceration, with nine years suspended.

 At Peters's sentencing hearing, Hedstrom and Funke both testified that they were terrified and believed they were about to be executed by Peters. Hedstrom and D.O.P. were diagnosed with post-traumatic stress disorder and regularly experience anxiety, nightmares, panic attacks, and somatic symptoms. Both Hedstrom and D.O.P. regularly attend therapy sessions to cope with the trauma of

the incident on August 10, 2020, and continue to suffer mental health symptoms related to that event.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

Although L.R. 7.1(d)(1)(B)(ii) permits the court to consider the failure to respond to a motion for summary judgment as an admission that the motion is well-taken, the court must nevertheless evaluate the merits of the motion. *Winters v. Country Home Products, Inc.*, 654 F. Supp. 2d 1173, 1179 (D. Mont. 2009). The Court must independently determine whether there are genuine issues of material fact, and if there are none, the Court may grant summary judgment when it is apparent that the movant is entitled to judgment as a matter of law. *Winters*, 654 F. Supp. 2d at 1179 (citations omitted).

Because this is a diversity action, the Court applies the substantive law of Montana, the forum state. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). "If the state's highest appellate court has not decided the question presented, then [the federal district court] must predict how the state's highest court would decide the question" *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007).

## III. Discussion

Hedstrom alleges four claims in her Complaint: two counts of assault (for herself and D.O.P.) and two counts of intentional infliction of emotional distress (for herself and D.O.P.). (Doc. 6). Based on the undisputed facts, Plaintiff has established she is entitled to summary judgment on all four claims.

### A. Assault Claims

Montana defines the tort of assault as "any intentional threat of harmful or offensive contact with another by force under circumstances which create a well founded fear of such contact, coupled with the apparent present ability to carry out the threat." *Saucier ex. rel. Mallory v. McDonald's Rest. of Mont., Inc.*, 179 P.3d 481, 494 (Mont. 2008) (citing M.P.I.2d 9.01). A person may be liable for assault if he intends to cause an imminent apprehension of a harmful or offensive contact to a third party, and that third party has such an imminent apprehension. *Collins v. State, Dep't. of Justice, Div. of Highway Patrol*, 755 P.2d 1373, 1377 (Mont. 1988).

In her Complaint, Hedstrom alleges Peters's conduct caused reasonable apprehension of imminent harmful contact to both herself and D.O.P., and that Peters intended to cause that apprehension. In her motion for summary judgment, however, Peters argues that, as to D.O.P., Peters is liable for assault because of the doctrine of transferred intent, which assigns liability to a person who intends to

6

cause harm to another, but in the effort to do so, causes harm to an unintended victim. *See Baska v. Scherzer*, 156 P.3d 617, 623 (Kan. 2007); *Logan v. City of Pullman Police Dep't.*, 2006 U.S. Dist. LEXIS 25660, *15-16 (E.D. Wash. Jan 13, 2006). The Montana Supreme Court has not weighed in on whether the doctrine of transferred intent applies to civil assault claims, though it has long been an accepted concept in criminal law. *See* Mont. Code Ann. § 45-2-201(2)(a).

The Court need not resolve this issue, however, as the undisputed facts establish both Hedstrom and D.O.P. are entitled to judgment as a matter of law on their assault claims. Peters lay in wait for Hedstrom, Funke and D.O.P. with the intent to ambush them, and did in fact do so by holding them at gunpoint. During this incident, he threatened to "end this now" and forced Hedstrom to lay face-down on the floor. Although a young child, D.O.P. undoubtedly experienced a well-founded fear of harmful contact as he watched Peters hold Hedstrom and Funke at gunpoint, yell he was going to kill them, force Hedstrom to the floor, and hold a gun to her head. Hedstrom, his mother, begged for her life while D.O.P. watched Peters point the gun at her head. D.O.P. screamed and cried, and ran to his mother's arms while this was occurring. This extraordinarily volatile situation, involving threats to kill, screaming and crying, undoubtedly caused D.O.P. to reasonably fear imminent harmful contact as he was part and parcel of the incident as it was unfolding in real time. Peters's actions were intentional, and he had the

apparent present ability to carry out his threats, as he pointed the gun at both Funke and Hedstrom and told them he was going to end it all. Both D.O.P. and Hedstrom are entitled to summary judgment on their claims for assault against Peters.

### B. Intentional Infliction of Emotional Distress

The Montana Supreme Court has long recognized the independent tort of intentional infliction of emotional distress, which arises "where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Sacco v. High Country Indep. Press*, 896 P.2d 411, 428 (Mont. 1995). While some amount of emotional distress is to be expected in the activities of daily living, the level of emotional distress that results in liability must be "so severe that no reasonable man could be expected to endure it." *Czajkowski v. Meyers*, 172 P.3d 94, 101 (Mont. 2007) (citing Restatement (Second) of Torts, § 46, cmt. j). It includes "mental suffering, mental anguish, mental or nervous shock. . . [as well as] fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." *Czajkowski*, 172 P.3d at 101 (citing cmt. j). Factors the Court should consider are the intensity and duration of the distress experienced, as well as extreme or outrageous conduct of the defendant. *Czajkowski*, 172 P.3d at 94.

It is undisputed in this case that Peters's conduct was both extreme and outrageous, and it is further undisputed that both Hedstrom and D.O.P. have

8

suffered, and continue to suffer, severe emotional distress as a reasonably foreseeable consequence of Peters's intentional conduct. Peters held them at gunpoint, yelling and threatening to kill Hedstrom and Funke, and forced Hedstrom get face-down on the ground, as if he was going to shoot her execution-style. D.O.P. was distraught, screaming and crying as he watched his mother's life threatened by his father. Hedstrom believed she was going to be killed in front of her son. Hedstrom and D.O.P. have been diagnosed with post-traumatic stress disorder and suffer from anxiety, nightmares, panic attacks and somatic symptoms. They both attend regular therapeutic sessions to help cope with the trauma of that day. The undisputed facts establish that both Hedstrom and D.O.P. are entitled to summary judgment on their claims for intentional infliction of emotional distress.

### IV. Conclusion

For the reasons discussed above,

IT IS RECOMMENDED that Hedstrom's Motion for Partial Summary Judgment be granted in its entirety.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.

DATED this 14th day of February, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge